UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

|  |  |
|---|---|
| JUAN ALBERTO RIVERA-CRUZ, | : |
| Plaintiff, | : |
|  | : |
| v. | : CASE NO. 3:16-cv-2060(RNC) |
|  | : |
| NANCY A. BERRYHILL, | : |
| ACTING COMMISSIONER OF SOCIAL | : |
| SECURITY, | : |
| Defendant. | : |
|  | : |

RULING AND ORDER

Plaintiff brings this action against the Commissioner of
Social Security pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3),
challenging the denial of his applications for Title II
disability insurance benefits ("DIB") and Title XVI supplemental
security income ("SSI") benefits.[1]  Plaintiff moves for an order
reversing the decision and remanding for payment of benefits.

---

[1] Under the Social Security Act, the "Commissioner of Social
Security is directed to make findings of fact, and decisions as
to the rights of any individual applying for a payment under [the
Act]."  42 U.S.C. §§ 405(b)(1), 1383(c)(1)(A).  The
Commissioner's authority to make such findings and decisions is
delegated to administrative law judges ("ALJs").  See 20 C.F.R.
§§ 404.929, 416.1429.  Claimants can in turn appeal an ALJ's
decision to the Social Security Appeals Council.  See id. §§
404.967, 416.1467.  If the Appeals Council declines review or
affirms the ALJ opinion, the claimant may appeal to the United
States district court.  42 U.S.C § 405(g); see also id. §
1383(c)(3).  Section 205(g) of the Social Security Act provides
that "[t]he court shall have power to enter, upon the pleadings
and transcript of the record, a judgment affirming, modifying, or
reversing the decision of the Commissioner of Social Security,
with or without remanding the cause for a rehearing."  Id. §
405(g); see also id. § 1383(c)(3).

1

The Commissioner moves for an order affirming the denial of benefits.  Because the ALJ did not provide an adequate statement of reasons for the weight he gave to the opinions of the plaintiff's treating physicians, as he was obliged to do by the treating physician rule, the case must be remanded.  On the remand, the ALJ will have an opportunity to reconsider the weight to be given the medical opinions and provide a detailed statement of reasons.  In addition, it will be necessary for the ALJ to revisit the issue of the plaintiff's credibility in light of the ALJ's reassessment of the weight to be given the medical opinions under the treating physician rule.

I. Background

Plaintiff first applied to the Social Security Administration ("SSA") for DIB on June 8, 2009, and for SSI on April 22, 2010.  The SSA determined that plaintiff was disabled under both programs for a closed period from May 20, 2008 to December 6, 2010, but that he had medical improvement as of December 7, 2010, which ended his disability.  Plaintiff reapplied for SSI on December 11, 2012 and for DIB the next day, alleging a disability onset date of September 16, 2011. Plaintiff met the insured status requirements of the Social Security Act through March 31, 2016.[2]  A disability adjudicator

_____

[2] In order to be entitled to DIB, a claimant must "have enough social security earnings to be insured for disability, as described in § 404.130."  20 C.F.R. § 404.315(a)(1).

2

denied plaintiff's applications on February 5, 2013, and upon reconsideration on May 16, 2013.

On May 12, 2015, plaintiff appeared with counsel and a Spanish-language interpreter for a hearing before an ALJ. On June 11, 2015, the ALJ issued a decision denying benefits. The Appeals Council denied plaintiff's request for review on October 18, 2016. This appeal followed.

Plaintiff was 38 years old on the alleged disability onset date. He has a ninth or tenth grade education and speaks Spanish; he is not able to communicate in English. Plaintiff previously worked as a janitor and car mechanic.

Before the alleged disability onset date of September 16, 2011, plaintiff had a history of medical impairments. He experienced problems with both wrists in 2008, leading to surgical procedures on his right wrist that year and on his left wrist in 2010. He had a history of some disc degeneration at L5-S1, lower back pain with radiation into his lower extremities, and Achilles bursitis or tendinitis. Additionally, he had diagnoses of asthma, obesity, a shoulder impairment, high cholesterol, and diabetes mellitus.

A December 2011 examination showed that plaintiff had acquired cavovarus feet. In 2012, he underwent surgery for his right elbow, and in 2013 he underwent a shortening osteotomy of the right forearm. He received prescriptions for a back brace

and cane in 2013 at his request, though he eventually stopped using the cane due to wrist pain. That same year, he was diagnosed with insertional Achilles tendinitis and post-trauamatic arthritis of the right wrist. X-rays of his left elbow in 2013 were negative, but X-rays of his feet and ankles in 2013 and 2014 showed calcaneal enthesophytes. In 2014, he underwent a tendon sheath release surgery for stenosing tenosynovitis of his left index finger. Later that year, a cyst was excised from his right little finger. Also in 2014, he visited the emergency room complaining of lumbar pain and was diagnosed with lumbar strain. Physical examinations throughout the period in question showed ongoing back pain, including posterior spinal tenderness and paravertebral muscle spasm. Plaintiff's primary care doctor noted a diagnosis of depression in 2013, 2014, and 2015.

## II. Legal Standard

"A district court reviewing a final . . . decision [of the Commissioner] pursuant to . . . 42 U.S.C. § 405(g), is performing an appellate function." Zambrana v. Califano, 651 F.2d 842, 844 (2d Cir. 1981). Accordingly, the court may not make a de novo determination of whether a plaintiff is disabled in reviewing a denial of disability benefits. See id.; Wagner v. Sec'y of Health & Human Servs., 906 F.2d 856, 860 (2d Cir. 1990). Rather, the court's function is to ascertain (1) whether the Commissioner

applied the correct legal principles in reaching her conclusion and (2) whether the decision is supported by substantial evidence.  Johnson v. Bowen, 817 F.2d 983, 985 (2d Cir. 1987). The "deferential" "substantial evidence" standard of review does not apply to conclusions of law.  Townley v. Heckler, 748 F.2d 109, 112 (2d Cir. 1984).  Absent legal error, however, this court may not set aside the decision of the Commissioner if it is supported by substantial evidence.  Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982).  "The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, [are] conclusive . . . ."  42 U.S.C. § 405(g).  If the Commissioner's decision is supported by substantial evidence, it will be sustained, even if there may also be substantial evidence to support the plaintiff's position.  Schauer v. Schweiker, 675 F.2d 55, 57 (2d Cir. 1982).  Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Williams v. Bowen, 859 F.2d 255, 258 (2d Cir. 1988) (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)).  Substantial evidence must be "more than a mere scintilla or a touch of proof here and there in the record."  Id.

III. Discussion

The Social Security Act establishes that benefits are payable to individuals who have a disability.  42 U.S.C. §§ 423(a)(1), 1381a.  A "disability" is an "inability to engage in

any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." Id. § 423(d)(1)(A); see also id. § 1382c(a)(3)(A). There are five steps in a disability determination: (1) the Commissioner considers whether the claimant is currently engaged in substantial gainful activity; (2) if not, the Commissioner considers whether the claimant has a "severe medically determinable physical or mental impairment" which limits his mental or physical ability to do basic work activities; (3) if so, the Commissioner asks whether, based solely on the medical evidence, the claimant has an impairment which "meets or equals" an impairment listed in Appendix 1 of the regulations. If so, and the impairment meets the duration requirements, the Commissioner will consider the claimant disabled, without considering other factors; (4) if not, the Commissioner then asks whether, despite the claimant's severe impairment, he has the "residual functional capacity" ("RFC") to perform his past work; and (5) if the claimant cannot perform his past work, the Commissioner then determines whether there is other work in the national economy which the claimant can perform.[3]  20 C.F.R. §§

_____

[3] The determination of whether such work exists in the national economy is made without regard to "whether such work exists in the immediate area in which [the claimant] lives, or

6

404.1520(a)(4)(i)-(v), 416.920(a)(4)(i)-(v).  The claimant bears the burden of proof at the first four steps, while the burden shifts to the Commissioner at the last step.  McIntyre v. Colvin, 758 F.3d 146, 150 (2d Cir. 2014) (citing Brault v. Soc. Sec. Admin., Comm'r, 683 F.3d 443, 445 (2d Cir. 2012); Burgess v. Astrue, 537 F.3d 117, 128 (2d Cir. 2008)).

In this case, the issues presented by the parties are (1) whether the ALJ correctly determined that plaintiff's depressive disorder was non-severe and did not meet or equal the severity of a listed impairment under 20 C.F.R. Part 404, Subpart P, Appendix 1; and (2) whether substantial evidence supports the ALJ's determination that plaintiff's RFC was for a limited range of unskilled sedentary work.  Regarding plaintiff's RFC, plaintiff challenges (a) whether the ALJ properly found that reports from a treating physician, Syed Naqvi, M.D., and treating surgeon, Duffield Ashmead, M.D., were "not entitled to significant probative weight"; and (b) whether the ALJ properly found that plaintiff's statements concerning the intensity, persistence, and limiting effects of his symptoms were  "not entirely credible."

After careful review of the record, I agree with the Commissioner that the ALJ relied on substantial evidence in determining that plaintiff's depressive disorder was non-severe.

---

whether a specific job vacancy exists for him, or whether he would be hired if he applied for work."  42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

However, because the ALJ did not comply with the requirements of the treating physician rule, the case must be remanded. Because the weight to be given the medical opinions bears on the plaintiff's credibility, the ALJ must also revisit the credibility issue.

A. <u>Depressive Disorder</u>

At step two of his analysis, the ALJ found that plaintiff had a medically determinable depressive disorder that was non-severe because it did not "cause more than minimal limitation in [plaintiff's] ability to perform basic mental work activities." R. at 15. At step three, the ALJ also found that none of plaintiff's impairments, including his depressive disorder, met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. Plaintiff contends that the ALJ's determinations were not supported by substantial evidence. The Commissioner responds that the ALJ's reasoning was supported by substantial evidence.[4]

---

[4] The Commissioner also argues that even if the ALJ should have found that plaintiff's depressive disorder was a severe impairment at step two of the analysis, that would constitute harmless error since the ALJ found that plaintiff had other severe impairments and thus continued the sequential analysis to the remaining steps. In support of this argument, the Commissioner cites <u>Reices-Colon v. Astrue</u>, 523 F. App'x 796, 798 (2d Cir. 2013). However, <u>Reices-Colon</u> may require that the ALJ <u>explicitly</u> consider the depressive disorder at steps four and five in order to render such an error harmless. <u>E.g.</u>, <u>Hernandez v. Berryhill</u>, No. 3:17-CV-368 (SRU), 2018 WL 1532609, at *11 (D. Conn. Mar. 29, 2018); <u>see also</u> <u>Parker-Grose v. Astrue</u>, 462 F. App'x 16, 18 (2d Cir. 2012). <u>But see</u> <u>Hall v. Colvin</u>, No.

Once the ALJ found that plaintiff had a medically determinable mental impairment in the form of a depressive disorder, he next had to consider "four broad functional areas in which [the ALJ would] rate the degree of [plaintiff's] functional limitation: Activities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation."  20 C.F.R. § 404.1520a(c)(3) (2015).[5]  If the plaintiff's degree of limitation in the first three areas was "none or mild," and in the fourth area was "none," it would be proper to find that his impairment was not severe, "<u>unless</u> the evidence otherwise indicate[d] that there [was] more than a minimal limitation in [plaintiff's] ability to do basic work activities."  <u>Id.</u> § 404.1520a(d)(1) (emphasis added).

In this case, the ALJ considered the "four broad functional areas" and concluded that plaintiff's degree of limitation was "none" in all four.  Accordingly, 20 C.F.R. § 404.1520a(d)(1) would direct a finding that the impairment was not severe <u>unless</u>

---

7:12-cv-1733 (GLS), 2014 WL 411543, at *2 (N.D.N.Y. Feb. 3, 2014).  This court need not determine the proper interpretation of <u>Reices-Colon</u> because the ALJ's reasoning was supported by substantial evidence.

    [5] "The Court applies the Regulations in effect at the time of the ALJ's decision."  <u>Graham v. Comm'r of Soc. Sec.</u>, No. 16-CV-142 (LDH), 2017 WL 1232493, at *3 n.2 (E.D.N.Y Mar. 31, 2017) (citing Revised Medical Criteria for Evaluating Mental Disorders, 81 Fed. Reg. 66138-01, 66138 n.1 (Sept. 26, 2016)).  Therefore, the court applies the steps required by the regulations in place on June 11, 2015, the date of the ALJ's decision.

additional evidence indicated that there was more than a minimal limitation in his ability to perform basic work activities.  The ALJ found that plaintiff's depression did not cause such a limitation.

Plaintiff does not challenge the ALJ's determination regarding the four functional areas.  Rather, he argues that the ALJ improperly characterized the medical evidence and, accordingly, that the ALJ erred in finding that his depressive disorder did not cause more than a minimal limitation in his ability to do basic work activities.  I disagree.  As explained below, the ALJ's step-two determination was based on substantial evidence in the record.

The record shows that, prior to August 2013, plaintiff exhibited "[n]o unusual anxiety or evidence of depression." E.g., R. at 840, 868, 893.  The record notes a diagnosis of a depressive disorder in August 2013, but no evidence of it in January 2014.  R. at 1042, 1161.  Depression was present in March 2014, and again in August 2014, but with improvement.  R. at 1068, 1093.  In January 2015, plaintiff had difficulty concentrating,[6] and in February 2015, he was symptomatic for

_____

[6] As noted, plaintiff does not challenge the ALJ's analysis of 20 C.F.R. § 404.1520a(c)(3), under which the ALJ found that plaintiff had "no difficulties in maintaining concentration, persistence or pace."  Nevertheless, the court notes that the record as a whole shows little evidence of difficulty maintaining concentration.  Thus, even if the ALJ should have found more than "no difficult[y] in maintaining concentration," R. at 15

10

depressive disorder.  R. at 1230, 1241.  But when asked at the
May 2015 hearing what conditions prevented him from working, he
mentioned only his back and right arm.  R. at 60.  There is no
indication that he sought treatment from a mental health care
provider during the time period in question; rather, he sought
care only from his primary care provider.  E.g., R. at 1230.  The
ALJ's conclusion that plaintiff's depressive disorder "[did] not
cause more than minimal limitation in [his] ability to perform
basic mental work activities and is therefore nonsevere" is thus
supported by substantial evidence.

    Plaintiff also argues that the ALJ's step-three conclusion
that the depressive disorder did not meet or equal the severity
of the impairment listed at 20 C.F.R. Part 404, Subpart P,
Appendix 1, Listing 12.04, was not supported by substantial
evidence.  Plaintiff did not satisfy the listed requirements:[7]

> [The depression must] [r]esult[] in <u>at least two</u> of the
> following:
> 1. Marked restriction of activities of daily living; or
> 2. Marked difficulties in maintaining social functioning; or

---

(emphasis added), there is substantial evidence supporting that
the depression was non-severe, because even a "mild" finding
regarding inability to concentrate would not change this
conclusion.  See 20 C.F.R. § 404.1520a(c)(3) (2015).

    [7] As of June 11, 2015, Listing 12.04 required either that
both Paragraphs A and B of the listing be satisfied, or that
Paragraph C be satisfied.  Plaintiff appears to argue that he
satisfied both Paragraphs A and B.  This court need not evaluate
whether he satisfied Paragraph A, because he did not satisfy
Paragraph B.  The language quoted above is from Paragraph B.

3. Marked difficulties in maintaining concentration,
persistence, or pace; or
4. Repeated episodes of decompensation, each of extended
duration[.]

20 C.F.R. pt. 404, subpt. P, app. 1 § 12.04(B) (emphasis added).

As discussed above, plaintiff did not satisfy "at least two" of

these criteria; at most, he had some difficulties with

concentration.  Nor does plaintiff explain how his depressive

disorder "is at least equal in severity and duration to the

criteria of any listed impairment."  Id. § 404.1526(a).  Thus,

the ALJ's step-three analysis was supported by substantial

evidence.

B. Residual Functional Capacity

The ALJ determined that plaintiff had the residual

functional capacity to perform less than the full range of

sedentary work as defined in 20 C.F.R. § 404.1567(a) and

416.967(a).[8]  Specifically, the ALJ found that plaintiff

can lift and/or carry up to 10 pounds occasionally and 5
pounds frequently with his dominant right upper extremity,
and 20 pounds occasionally, and 10 frequently with his non-
dominant left upper extremity.  The claimant can stand for
30 minutes at a time and for 2 to 3 hours in an 8-hour day,
walk for 15 minutes at a time and for 2 to 3 hours in an 8-

_____

[8] 20 C.F.R. §§ 404.1567(a) and 416.967(a) define sedentary
work in the same way.  Such work "involves lifting no more than
10 pounds at a time and occasionally lifting or carrying articles
like docket files, ledgers, and small tools."  Additionally,
while "a sedentary job is defined as one which involves sitting,
a certain amount of walking and standing is often necessary in
carrying out job duties.  Jobs are sedentary if walking and
standing are required occasionally and other sedentary criteria
are met."

hour day, and stand or walk for a total of 4 hours in an 8-hour day.  He may frequently push, pull and operate controls and reach overhead with his dominant upper extremity, and he may occasionally grasp and frequently feel and handle with his dominant upper extremity.  The claimant may climb stairs and ramps with a handrail for two flights, and occasionally balance, stoop, and kneel.  He cannot crouch, crawl, or climb ladders, rope or scaffolding.  The claimant must avoid all exposure to unprotected heights and avoid concentrated exposure to moving machinery, pulmonary irritants, and temperature extremes, such that a typical office environment would be acceptable.

R. at 15-16.  In making this determination, the ALJ found that questionnaires completed by two of plaintiff's treating physicians, Dr. Naqvi and Dr. Ashmead, were not entitled to significant probative weight.  He also found that the opinion of a state agency medical consultant, who found at the reconsideration level in May 2013 that plaintiff could perform medium exertional work activity, was not entitled to significant probative weight.  By contrast, the ALJ found that the opinion of the medical expert who testified at the hearing on the basis of the record alone, John A. Pella, M.D., was entitled to significant probative weight.  Finally, the ALJ found that plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms," but that plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible."  R. at 17.

Plaintiff argues that the record does not support the ALJ's decision to give less than significant probative weight to the opinions of the treating physicians, or his finding that

plaintiff's statements were not entirely credible.  The

Commissioner responds that the ALJ's findings align with the

record.  As discussed below, the case must be remanded for

correct application of the treating physician rule and

reconsideration of the credibility of plaintiff's statements.

1. <u>The Treating Physician Rule</u>

Plaintiff argues that the ALJ failed to properly consider

the opinions of his treating physicians as stated in their

Medical Source Statements.  R. at 941-44 (Medical Source

Statement of Dr. Ashmead, Dec. 23, 2014), 1132-35 (Medical Source

Statement of Dr. Naqvi, Jan. 9, 2015).  The Commissioner responds

that the ALJ was correct to assign greater probative weight to

the assessment of Dr. Pella, the physician who testified at the

hearing solely on the basis of an analysis of the record.[9]

"[T]he opinion of a claimant's treating physician as to the

nature and severity of the impairment is given controlling weight

so long as it is well-supported by medically acceptable clinical

and laboratory diagnostic techniques and is not inconsistent with

the other substantial evidence in the case record."  <u>Greek v.</u>

<u>Colvin</u>, 802 F.3d 370, 375 (2d Cir. 2015) (quoting <u>Burgess</u>, 537

F.3d at 128 (internal quotation marks and brackets omitted)).

_____

[9] Neither party challenges the ALJ's determination that the opinion of the state agency medical consultant at the reconsideration level, who found that plaintiff could perform medium exertional work activity, was not entitled to significant probative weight.

14

Such "other substantial evidence" can include "the opinions of other medical experts." Id. (quoting Halloran v. Barnhart, 362 F.3d 28, 32 (2d Cir. 2004) (per curiam)). Thus, it is possible for other medical experts' contrasting opinions to limit the weight assigned to a treating physician's opinion. Nevertheless, the ALJ must "always give good reasons" for the weight assigned to the treating physician's opinion. 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2) (2015). Additionally, if the treating physician's opinion is not given controlling weight, the ALJ must consider a number of factors to determine the appropriate weight to give the opinion.[10] Id. §§ 404.1527(c)(2), 416.927(c)(2). This "'treating physician rule' . . . generally requires a measure of deference to the medical opinion of a claimant's treating physician." Halloran, 362 F.3d at 32. Therefore, "[a]n ALJ must provide 'good reasons' for affording limited weight to the treating source's opinion and more weight to a non-treating source." Smith v. Berryhill, No. 17-2005-CV, 2018 WL 3202766, at *2 (2d Cir. June 29, 2018) (citing Schaal v. Apfel, 134 F.3d 496, 505 (2d Cir. 1998); 20 C.F.R. § 404.1527(c)(2)). In other words, if the treating physician's

---

[10] These factors include the examining relationship, the treatment relationship, the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, evidence in support of the medical opinion, consistency with the record as a whole, specialty in the medical field, and any other relevant factors. 20 C.F.R. §§ 404.1527(c), 416.927(c).

opinion is to be disregarded, the ALJ must explain why.  Snell v.
Apfel, 177 F.3d 128, 134 (2d Cir. 1999) ("[A]dministrative
decisionmakers . . . [have an] obligation, under Schaal and §
404.1527(d)(2), to explain why a treating physician's opinions
are not being credited.").  Courts "do not hesitate to remand
when the Commissioner has not provided 'good reasons' for the
weight given" to a treating physician's view, and remand is
appropriate when the ALJ's opinion "do[es] not comprehensively
set forth reasons for the weight assigned to a treating
physician's opinion."  Halloran, 362 F.3d at 33 (emphasis added).
While a court may in some cases be able to review the record and
determine that "the substance of the treating physician rule was
not traversed," id. at 32, such a determination is not always
possible from the record.  Particularly in a case where an ALJ's
findings "appear[] to have exclusively relied on [a non-treating
physician's] testimony" over the opinions of treating physicians,
a court may assign error to the ALJ's opinion.  Bradley v.
Colvin, 110 F. Supp. 3d 429, 444 (E.D.N.Y. 2015); see Vargas v.
Sullivan, 898 F.2d 293, 295 (2d Cir. 1990) ("It is obvious that
the A.L.J. based his conclusion on the testimony of . . . his
medical adviser . . . .  In thus elevating the opinion of the
medical adviser, who never had examined [the plaintiff], over
that of . . . her treating physician, the A.L.J. violated a

general rule adopted in all, or virtually all, of the circuits."). Here, the ALJ's explanation fell short.

The three medical opinions at issue are those of Dr. Ashmead, plaintiff's treating hand surgeon, who provided an opinion related to plaintiff's right arm and hand issues only; Dr. Naqvi, plaintiff's primary care provider; and Dr. Pella, a medical expert who testified at the hearing based on a review of the full record, without having examined the plaintiff. All three provided evidence related to plaintiff's RFC.[11]

_____

[11] The weight assigned to the physicians' opinions was consequential for the disability determination. The ALJ's determination of plaintiff's RFC matches almost exactly Dr. Pella's opinion expressed in the hearing. By contrast, elements of the treating physicians' opinions that could have led to a disability determination were disregarded. To take one example, Dr. Naqvi indicated that plaintiff's symptoms and/or medications cause him to lie down during the day. R. at 1135. At the hearing, the ALJ asked the vocational expert, Albert Sabella, whether a hypothetical individual with plaintiff's age, education, work experience, and alleged RFC could perform any jobs in the national economy. Mr. Sabella provided two examples. On that basis, the ALJ found at step five that there were jobs in the national economy that plaintiff could perform, and thus that plaintiff was not disabled. However, the ALJ also asked Mr. Sabella whether there would be jobs available to the same hypothetical individual if he would "be off task for an hour during the workday . . . whether because of the need to lie down or just inability to sit, stand and walk for more time than that." R. at 72. Mr. Sabella testified that in that case, there would be no jobs available in the national economy. Because the ALJ found that plaintiff was not disabled, he apparently determined that the latter hypothetical situation did not apply to plaintiff. If the ALJ had given significant probative weight to Dr. Naqvi's opinion, it is possible that he would have found that hypothetical scenario applicable. To be clear, Dr. Naqvi did not state whether plaintiff would need to be off task for an hour every day as a result of lying down. However, because the ALJ did not provide good reasons regarding the weight given to

The ALJ determined that Dr. Pella's opinion was "entitled to significant probative weight" while the opinions of Dr. Naqvi and Dr. Ashmead were not.  R. at 21-22.  As to both Dr. Ashmead and Dr. Naqvi, the ALJ simply stated:

> To the extent that this opinion evidence is inconsistent with the residual functional capacity above, it is not supported by the physical and neurological examinations of record, the claimant's treatment history, or his activities of daily living as discussed above.  In light of the fact that this evaluation is not supported by and is not consistent with the record as a whole, it is not entitled to significant probative weight.

R. at 21-22 (citations omitted).[12]

This explanation is insufficient.  An ALJ's "conclusory assertion" that a treating physician's opinion is "inconsistent" with other evidence in the record "does not constitute a good reason to discount that opinion."  Trankle v. Berryhill, No. 16-CV-846-FPG, 2017 WL 5988046, at *4 (W.D.N.Y. Dec. 4, 2017).  A "cursory" discussion of treating physicians' opinions is not enough, particularly when, as here, the testifying physician himself "gave entirely conclusory opinions and pointed out nothing in the way of shortcomings with respect to the medical

---

Dr. Naqvi's opinion, this court cannot determine whether the ALJ's determination that the hypothetical was not applicable, and thus that plaintiff was not disabled, was supported by substantial evidence.

[12] By contrast, as to Dr. Pella, the ALJ wrote: "In light of the fact that [Dr. Pella's] evaluation is supported by and is consistent with the record as a whole, it is entitled to significant probative weight."  R. at 22.

evidence from the plaintiff's treating physicians." Twigg v. Comm'r of Soc. Sec., No. 3:16CV1500 (AWT), 2018 WL 855560, at *4 (D. Conn. Feb. 13, 2018) (discussing the same testifying medical expert as in the present case); see R. at 45-57.

Moreover, when a treating physician's opinion is not given controlling weight, an ALJ must consider various factors in determining the appropriate weight to give the opinion, including the "[l]ength of the treatment relationship and the frequency of examination." 20 C.F.R. §§ 404.1527(c)(2)(i), 416.927(c)(2)(i) (2015). The records in this case demonstrate that Dr. Naqvi had treated plaintiff frequently since at least May 2008, and Dr. Ashmead a number of times since at least November 2010. R. at 436, 771. The ALJ did not discuss these lengthy treatment relationships in dismissing the physicians' opinions as "not entitled to significant probative weight." The regulations do not require "slavish recitation of each and every factor where the ALJ's reasoning and adherence to the regulation are clear." Atwater v. Astrue, 512 F. App'x 67, 70 (2d Cir. 2013). In this case, however, "the ALJ's reasoning and adherence to the regulation" are not clear. "'[A]ll of the factors cited in the regulations' must be considered to avoid legal error." Twigg, 2018 WL 855560, at *2 (quoting Schaal, 134 F.3d at 504). This Court cannot determine whether the ALJ properly considered the

necessary factors.[13]  On remand, the ALJ should determine the proper weight to assign to the treating physicians' opinions and, regardless of what that weight is, provide "good reasons" as required by the regulations.

## 2. Plaintiff's Credibility

The ALJ found that plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms" but that plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible." R. at 17.  The ALJ found that the medical evidence, treatment history, and activities of daily living did not fully support plaintiff's alleged disability.  R. at 17, 21.  Plaintiff argues that the ALJ's decision was not based on substantial evidence because the ALJ "minimiz[ed] . . . years of medical treatment[]" and "selectively appl[ied]"

_____

[13] The Court expresses no view on whether the ALJ should have given the treating physicians' opinions "controlling weight."  In fact, there are some discrepancies between the two opinions.  For example, Dr. Ashmead agreed with Dr. Pella that plaintiff could occasionally lift and/or carry ten pounds on the right side, whereas Dr. Naqvi stated plaintiff's limit would be less than ten pounds.  R. at 51, 941, 1132.  Such a discrepancy does not eliminate the need to consider these opinions, however; rather, "[i]t is 'within the province of the ALJ to credit portions of a treating physician's report while declining to accept other portions of the same report, where the record contained conflicting opinions on the same medical condition.'" Twigg, 2018 WL 855560, at *1 (quoting Pavia v. Colvin, No. 6:14-cv-06379 (MAT), 2015 WL 4644537, at *4 (W.D.N.Y. Aug. 4, 2015)).

plaintiff's statements.[14]  I find that, "as the record currently stands," the ALJ's credibility determination is supported by substantial evidence.  <u>Mortise v. Astrue</u>, 713 F. Supp. 2d 111, 124 (N.D.N.Y. 2010).  However, because the ALJ failed to properly apply the treating physician rule, "the credibility evaluation is necessarily flawed."  <u>Id.</u> at 125.  That is, "[t]he ALJ's proper evaluation of [the treating physicians'] opinions will necessarily impact the ALJ's credibility analysis."[15]  <u>Id.</u> at 124-25.  Accordingly, on remand, the ALJ must reconsider the credibility determination in light of any revisions he makes to the weight accorded to the medical opinions.

## IV. <u>Conclusion</u>

Plaintiff's motion to reverse and remand (ECF No. 20) is granted in part, and the Commissioner's motion to affirm (ECF No.

---

[14] Plaintiff also argues that the ALJ's frequent description of the results of various medical examinations as "unremarkable" was intended solely to cast doubt onto the medical evidence. This argument is unpersuasive.  The terms "unremarkable" or "not remarkable" appear repeatedly in the records themselves.  <u>E.g.,</u> R. at 466, 513, 663, 692.  This court has reviewed the records and found that where the ALJ uses the term, regardless of whether the records use that term to describe that particular procedure or examination, the ALJ's usage is supported by substantial evidence.  Therefore, this argument is without merit.

[15] For example, Dr. Pella testified that plaintiff could stoop "occasionally," and the ALJ adopted this benchmark in the RFC.  R. at 16, 50.  By contrast, Dr. Naqvi asserted that plaintiff can "never" stoop.  R. at 1127.  Plaintiff indicated that he could not bend to put on or tie his shoes.  R. at 361. Whether the ALJ found plaintiff's statement credible would necessarily be impacted by the choice of which doctor's opinion received greater weight.

31) is denied.  Plaintiff's motion is granted to the extent that this case is remanded back to the ALJ.  On remand, the Commissioner is to properly apply the treating physician rule to determine the appropriate weight to give the doctors' opinions.  In addition, the Commissioner must reconsider the credibility of plaintiff's statements in light of any change in the weight accorded to the medical opinions.

So ordered this 30th day of September, 2018.


                              _____/s/ RNC_____
                                 Robert N. Chatigny
                              United States District Judge